## JOHN HORAN v. CHIEF JUSTICE OF TRAVIS COUNTY.

The object of the law of 1856, requiring a bond with heavy penalty from a party licensed to retail spirituous liquors, is to separate and keep apart the vicious propensities to game and to drink ardent spirits, so that the excitement of the one should not incite to indulgence in the other.

If a party licensed under the said act to retail spirituous liquors leased to another person a part of the premises in which he had obligated himself not to permit gaming, with the knowledge and understanding that such other person designed using the portion so leased for the purpose of keeping a billiard saloon therein, such leasing was a " permission " by the retailer of the games played in the saloon, and his bond became forfeited thereby.

In 1858, license was granted to an applicant to retail spirituous liquors at his " grocery store on Congress Avenue, in the city of Austin, on lot No. 3, in block No. 70." *Held*, that the designation of the lot and block did not constitute a limitation on the privilege conferred by the license, nor on the duty imposed by the bond therefor, but was merely a part of the description of the locality to which the license extended.

A party obtaining license to retail spirituous liquors cannot escape the penalty of his bond by limiting to a part of his house or establishment the locality in which he proposes to retail. The only effect ascribable to such a limitation would be that it abridged the extent of the privilege to retail to the particular part of the premises designated ; while the conditions of the bond would still have relation to the whole of the house or establishment.

See the facts of this case, in illustration of the foregoing principles.

APPEAL from Travis. Tried below before the Hon. A. W. Terrell.

This suit was instituted on the 29th of January, 1859, by Geo. H. Gray, Chief Justice of Travis county, against the appellant, Horan, and his sureties, upon his bond executed for license to retail spirituous liquors in the city of Austin.

This bond was in the penalty of $1,000, payable to "the Chief Justice of Travis county," dated October 16th, 1858, and conditioned as prescribed by the act of February 2, 1856, providing among other things that the party licensed would "not permit any game or games to be played in his house, whether licensed or not."

The license was for four months, and authorized the appellant to retail in the house known as "Horan's grocery, situated on Congress· avenue, in the city of Austin, on lot No. 3, in block 70." The breaches of the bond assigned in the petition were that, on several specified days during the term of the license, the said Horan did permit a game of billiards, a game of dominoes, and a game of cards to be played at the place specified in the license to retail.

The defendants answered with a general denial.

In January, 1860, the cause came to trial. The plaintiff introduced a witness who testified that, during the times laid in the petition, he had frequently "seen games of billiards played in the concrete building attached to defendant's house for the retail of spirituous liquors." He further testified that the grocery building was attached to and connected with the billiard saloon by a cistern room,. (which was used in common for the purposes both of the grocery and the saloon;) that upon entering the grocery room from Congress avenue, a person could see through the cistern room into the billiard saloon; that the front or grocery building was covered separate from the cistern room, and that the billiard saloon was covered by a still different roof; but that the walls of all three rooms were attached and connected together; that on entering the front or grocery building, there was a continuous floor to three steps leading to the cistern room, through a door-way to which there was no shutter; that from the cistern-room there was a continuous floor to the back end of the billiard saloon, but the entrance was through an open arched pass-way.

That all of the buildings belonged to the defendant, Horan, who was frequently in the billiard saloon while the games were being played. That the billiard tables were kept by A. H. Barnes, who rented them from the defendant, Horan, on the 27th of October, 1858, at the rate of fifty dollars per month. The witness did not think there had been any games of billiards played in said room from the time Horan took out license to retail, until Barnes rented the room.

A. H. Barnes, introduced for the defence, testified that on the 27th of October, 1858, he rented the billiard saloon from the defendant, Horan, for the purpose of having games played on the tables; that he was to pay Horan $50 per month for the saloon and tables; that under this contract witness kept the billiard saloon during all the time Horan retailed under the license involved in this case; that the lease was not a sham, but was a *bona fide* transaction; that Horan was not interested in the profits of the saloon, which he rented to witness for the purpose of keeping the tables for play. That witness took out a license for his saloon, and now recognizes it. This witness described the premises similarly to the plaintiff's witness, adding that the only way of closing the billiard saloon was by closing the back doors in the concrete building and the front door of the grocery building.

The court instructed the jury that: "By the term 'house' you are not to understand a particular portion of a house, a part of which may have been situate on lot No. 3 in block No. 70. Neither is it to be restricted to that particular portion of a house in which the defendant sold intoxicating liquor under his license. It may include, in contemplation of law, several rooms or buildings, when owned by one man, though constructed at different times, if those last erected were built by way of addition to the original structure, for the convenience of the owner in carrying on his business. The term 'house' may also include two separate and distinct buildings, built at different times, provided they are afterwards so united and joined together by the owner of both as to constitute one house. Nor is it necessary that they should both be under one roof to constitute one *house*.

"If the defendant, Horan, rented any room to another after the

execution of his bond, which was a part of the house in which he sold intoxicating liquor under his license, and he so rented such room, with the knowledge that the renter would keep a billiard saloon therein, and the game of billiards was played in such room so rented, the defendant Horan, in contemplation of law, *permitted* the game of billiards to be played in the house in which he re-tailed intoxicating liquors.

"That portion of the defendant's bond which locates the place in which he was permitted to sell on 'Lot No. 3,' is not to be construed as restricting his privilege to sell to that particular lot, but is to be regarded only as a description or part description of the locality of Horan's grocery house.

"It is not necessary that the permission to play billiards should have been given by the defendant Horan *at the time* the game was played, in order to render him liable on his bond for having *permitted* such playing. If he rented it to another, though in good faith, with the knowledge that it would be used for playing the game of billiards, which was understood and agreed on between the parties to the renting, such contract would as effectually have constituted a *permission* by Horan to play, as though he were present at the time of playing, consenting to it."

The jury returned a verdict against the defendants for $1,000, the penalty of the bond. New trial refused, and defendants appealed.

Moore, J.—The charge of the court clearly and forcibly presented to the jury the law applicable to the facts in the case, and is in strict accordance with the former decisions of this court on analogous questions. (Burditt v. The State, 9 Tex., 43; Pierce v. The State, 12 Tex., 210.) As is justly said by the counsel for appellee, "the object of the law in demanding a bond with a heavy penalty, from parties to whom a license to retail spirituous liquors is granted, is to separate and keep apart the vicious propensities to game, and to drink ardent spirits, so that the excitement of the one should not incite indulgence in the other." If a party who has obtained a license to retail, can evade the law by renting a part of his establishment, in which he has obligated him-

self not to permit gaming, with the intention and understanding that it is to be used for this purpose, the object and policy of the law would be defeated, and its administration by the courts would be a mere farce.

The statute does not permit a party who has obtained a license to retail, to do so at more than one place, and to prevent an evasion of the law, the house or place in which the business is to be conducted, must be described in the license; and if, for any purpose, it becomes necessary to determine the locality of the place or house, it must be done by an inspection of the entire description of the locality, as given in the license or bond, upon which the proceeding is based, together with such other testimony as may be required to make this description intelligible to the mind. Upon doing so in this case, there can be but little doubt that the room in which the gaming was permitted, was a part of "Horan's grocery store on Congress Avenue." And the judge properly instructed the jury, that the additional description of the establishment, as on Lot 3, in Block 70, was not to be regarded as a limitation upon the privilege conferred by the license, or duty imposed by the bond, but as a part of the description of the place or locality to which the license extended. It would be absurd to suppose that a party could escape from the penalty of his bond by confining the locality in which he wished to obtain permission to retail, to a part of his house or establishment. The most that can be said with reference to it, if such a thing were designed, is, that if he thereby limits the extent of the privilege which the license would otherwise have conferred, he does not curtail his liability.

There is no error in the judgment, and it is therefore affirmed.

Judgment affirmed.