# Campbell *v.* The State.

*Indictment against Licensed Retailer, for Suffering Gaming on his Premises.*

1. *Gaming on premises of licensed retailer; constituents of offense; burden of proof as to contract of sub-letting, and intent.*—A licensed retailer is bound to be diligent to prevent gaming on the premises used or controlled by him; and if he is the lessee of a two-story house, carrying on his business in the lower story, and knows that a room in the second story is used by his tenant for gaming purposes, he may be convicted under the statute (Rev. Code, § 3625), unless he affirmatively shows such an entire separation of the room from the lower story as will exonerate him from the liability which the law imposes on him; but it is a question for the jury to determine, whether he sub-rented the room in good faith, with the intent and expectation that it should be used only for some lawful purpose.

From the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The indictment in this case contained but a single count, which charged that the defendant, Henry Campbell, "before the finding of this indictment, being a licensed retailer, or the keeper, proprietor, owner, or superintendent of a tavern, inn, or house, where spirituous liquors were at the time sold, retailed, or given away, or of an outhouse where people resort, knowingly suffered certain persons, whose names are to the grand jury unknown, to play at a game with cards, or dice, or some device or substitute for cards or dice, in his said house, or on his said premises." The defendant pleaded not guilty, and on his trial reserved the following bill of exceptions to the rulings of the court:

[Campbell v. The State.]

"The State introduced *Henry Pitman* as a witness, who testified that, within twelve months preceding the date of the indictment, the defendant was a retailer and proprietor of a bar-room in the city of Montgomery; that he (witness) had several times seen parties, in the room immediately over said bar-room, playing at cards for money, or 'chips' representing money, on a table in said room covered with green cloth, in the centre of which room was a hole for the purpose of dropping in 'chips' which went to the keeper of the table, one Wesley Duncan; that there were two modes of access to said room—one from the side-walk, by a flight of stairs running down on the side of the building to within a short distance of the side-walk, and one by stairs running up from the back yard of the building; that the said bar-room was the front room in the lower story, and back of it was a billiard saloon, and in the back yard was a water-closet, which was used by the patrons of said bar and saloon; that said room in which the playing took place was at that time rented to said Wesley Duncan as a sleeping room, and was used by him as such, and he had control and possession of it; that he never saw defendant in said room when gaming was going on, or at any time; and that a person in the bar-room or billiard saloon would not be able to determine whether a party passing through into the back room was going to the water-closet or up the flight of stairs.

"The State then introduced *Oliver Alexander* as a witness, who testified substantially as the former witness had testified; also, that when gaming was going on in said room, the parties would send for drinks to the defendant's bar below; that sometimes they would send the money for drinks, and sometimes they would send the 'chips' representing money, used by them in carrying on said gaming. The defendant asked said witness, on cross-examination, whether he knew, of his own knowledge, where said drinks came from; to which he replied, that he did not. The defendant then asked the court to exclude from the jury the said testimony as to sending to his bar for drinks; which motion the court refused, but instructed the jury, that they would look to all the circumstances detailed by the witness, to ascertain where the drinks in fact came from; to which ruling of the court the defendant excepted. The witness further testified, that there was another bar-room just across the street; that when drinks were sent for, it was from three to five minutes before they came up; also, that he had never conversed with the defendant, or heard any one else converse with him, about the gaming in said room; that once, when the parties who had participated in said gaming were arrested, and carried

[Campbell v. The State.]

before the mayor of the city, there was a good deal of talk in said bar-room and billiard saloon about said gaming, but he could not swear that the defendant heard it; that he saw gaming in said room after this, but the defendant was not present, and, so far as witness knew, knew nothing about it.

"The State then introduced *John Blunt* as a witness, who testified substantially as said two former witnesses had testified; also, that there was a gate to the back yard of said building, opening upon an alley leading into the street; and that he had passed out at said gate, and had seen others do so. The State then introduced *John Hill* as a witness, who testified, that Wesley Duncan rented said room from the defendant in his presence; that said Duncan, at the time of said renting, stated to the defendant that he wanted said room for a bed-room, and that the defendant rented it to him for a bed-room; that the defendant never went to said room after it was so rented, and had no control thereof; also, that he (witness) was bar-tender for the defendant, and sent up drinks to said room for money or 'chips,' but did not see where said drinks went. The defendant thereupon asked the court to exclude said testimony, as to sending drinks to said room; which motion the court refused, but instructed the jury that, to ascertain where the drinks carried to said room in fact came from, they would look to all the circumstances detailed by the witness; to which ruling of the court the defendant duly excepted. The said witness further testified, that the defendant was not present when he sent drinks up to said room and received said 'chips' or money; and he also testified, as said former witnesses had done, as to the gaming in said room, the situation of the premises, and the conversation in the bar-room at the time of said prosecution before the mayor. All of said witnesses testified, that said gaming occurred in the city and county of Montgomery, and within twelve months before the finding of the indictment.

"The State then closed, and the defendant introduced no witnesses; and the foregoing being all the evidence before the jury, the court thereupon charged the jury, of its own motion, in substance as follows: 'That if the jury believed, beyond a reasonable doubt, that the said room of Wesley Duncan was in the defendant's house, and that the defendant had knowledge of the gaming in said room, and did not prevent it, nor take any steps to prevent or stop it, then the fact that said room was rented to Wesley Duncan, and was not in the possession of the defendant, was not material; that if the defendant was a licensed retailer, and the gaming occurred within twelve months before the finding of the indictment, and in said county of Montgomery, they must find

him guilty as charged.' To this charge the defendant
excepted, and then requested the court to give the following
charge, which was in writing: 'If the jury find, from the
evidence, that the alleged gaming took place in a room over
the defendant's bar-room, and that said room was, at the
time of said gaming, rented to Wesley Duncan for a sleeping
room, and occupied as such, and was not in the possession,
or under the control of the defendant, then said room was
not the 'premises' or 'house' of the defendant, within the
meaning of the statute, and they must acquit the defendant.'
The court refused this charge, and the defendant excepted
to its refusal."

L. A. SHAVER, for the defendant.—To justify a conviction
under the indictment in this case, the State must show—
1st, that the offense denominated "card playing in public
places," as defined in the statute (Rev. Code, § 3620), had
been committed; 2d, that the offense was committed in the
defendant's "house," or on his "premises"; and, 3d, that he
knowingly suffered it to be committed. It is submitted that
the evidence does not establish any one of these three facts.
It fails to show that Duncan's room, in which the alleged
gaming took place, was a "public house," or a "public place,"
as these terms have been construed in repeated decisions of
this court.—*Dale v. The State*, 27 Ala. 31; *Brown v. The State*,
27 Ala. 47–50; *Wilson v. The State*, 31 Ala. 371; *Bentley v.
The State*, 32 Ala. 596; *Phillips v. The State*, 51 Ala. 20. It
equally fails to show that said gaming was in the defendant's
"house," or "on his premises"; and shows, on the contrary,
that Duncan's room was not in the defendant's possession,
nor under his control. So far as this prosecution is con-
cerned, the room was as entirely distinct and separated from
the defendant's premises, as if it had been in another build-
ing; and the defendant had no control whatever over it, nor
could he have entered it, unless invited, without committing
a trespass.—Authorities *supra ;* also, Taylor's Landlord and
Tenant, 6th ed., § 57; Waterman, *Trespass*, 2 vol., § 967. If
there was any evidence showing knowledge of the gaming on
the part of the defendant, it was very slight, and inferential
only; and its sufficiency was a question for the jury, which
was taken from them by the charge of the court. Nor could
he be charged with permitting a thing, which, if he had
knowledge of it, he certainly had no power to prevent. In
all the cases cited for the prosecution, in which convictions
for gaming in a "public house," or a "public place," have
been sustained, the room in which the playing was done was
in the possession, or under the control of the defendant, and

[Campbell v. The State.]

was so connected with the other parts of the building as to partake of their character. If the defendant had been prosecuted for *knowingly permitting* a room, rented by him, to be used for gaming purposes, the indictment should have been founded on section 3626 of the Revised Code, which creates an offense distinct and different from that against which section 3625 is aimed. The charge of the court took from the jury the consideration of all these questions, and even the *bona fides* of the defendant's contract with Duncan; and being an invasion of the province of the jury in this respect, it was erroneous for this reason, if no other.

F. S. Ferguson, with the Attorney-General, for the State.— The defendant had the possession and control of the entire building, in which he carried on his business as a retailer, and it was *prima facie* an entirety.—*Johnson v. The State*, 19 Ala. 527; *Huffman v. The State*, 29 Ala. 40; *Cochran v. The State*, 30 Ala. 542; *Moore v. The State*, 30 Ala. 550; *Brown v. The State*, 27 Ala. 47; *Swallow v. The State*, 20 Ala. 30; *Smith v. The State*, 52 Ala. 384. The law imposed on him the greatest diligence, under heavy penalties, to prevent gaming on his premises; and if he sub-rented a portion of the premises, it was his duty to show the terms of the contract of subletting, and to use all the powers with which the law armed him, to prevent gaming on the leased premises. So soon as he found out that his tenant was using the rented room for gaming purposes, it was his right and duty to terminate the tenancy, and evict his tenant, if he could not otherwise put a stop to the gaming.—*Wilcox v. The State*, 50 Ala. 142; *Roberts v. Commonwealth*, 11 B. Mon. 3; *People v. Erwin*, 4 Denio, 129; *Nave v. Berry*, 22 Ala. 382; *Rasco v. Willis*, 5 Ala. 38; *Parkman v. Aicardi*, 34 Ala. 393. A gambling house was a nuisance at common law, and indictable as such.—2 Bishop's Crim. Law. § 522; Wharton's Am. Crim. Law, § 2446; *State v. Currin*, 23 Maine, 43; *Vanderwerker v. The State*, 8 Eng. Ark. 700.

MANNING, J.—The prosecution in this case is for knowingly suffering gaming at cards, in the house, or on the premises, occupied and used by the defendant for the retailing of spirituous and other liquors. That the gaming was in the upper story of the house, while the retailing was done in the lower, does not prevent it from being done on the premises, if the upper story was under the control of defendant.—*Johnson v. The State*, 19 Ala. 527; *Huffman v. The State*, 29 Ib. 40; *Cochran v. The State*, 30 Ib. 542; *Moore v. The State*, 30 Ib. 550. *Prima facie*, the premises are an entirety. And if

there be any such separation of the upper rooms from the lower, as would exonerate defendant from the charge of suffering gaming to be done therein, it devolved on him to prove it. He has shown that he hired the front room, over the bar-room, to one Wesley Duncan as a sleeping room; and it is proved that the latter keeps it as a sleeping room, and gaming room for card-playing. The access to it is by two outside flights of steps, one from the back yard in the rear of the apartments used by defendant, and the other from near the front of the same, and by the side of the house. Drinks are sent for, by those engaged in playing up stairs, to the bar-room below, and the liquors sent up are paid for in money, or in "chips," or "cheques," used as counters in the games. Other evidence also tends to show that defendant knows that the room above is used as a gaming room. What the terms were of the hiring of the room to Duncan are not shown. He was not introduced as a witness.

Defendant himself being lessee of the entire house, and in possession of all of it until the one room was hired to Duncan, and using a part of the lower story as a place for retailing vinous, spirituous, and other liquors, was bound to be diligent to prevent gaming with cards, dice, and other devices, to be carried on therein. Any alliance between these two occupations is regarded as a very great evil. So solicitous is the law concerning it, that it requires of a person receiving a license as retailer, to make and file an affidavit that he will not "allow any gaming of any kind on or about [his] premises."—Acts of 1875-6, p. 227. It is but a poor excuse, that the gaming is not done in the rooms he himself occupies, if it be done in a room of which he has the hiring out, and for which he can prescribe the terms of the holding, and in a house in which he retails spirituous and vinous liquors.

In *Horan v. Chief Justice of Travis County* (27 Texas, 226), it is well said: "The object of the law, in demanding a bond with a heavy penalty from a party to whom a license to retail spirituous liquors is granted, is to separate and keep apart the vicious propensities to game and to drink ardent spirits, so that the excitement of the one should not incite indulgence in the other. If a party who has obtained a license to retail can evade the law, by renting a part of his establishment, in which he has obligated himself not to permit gaming, with the intention and understanding that it is to be used for this purpose, the policy of the law would be defeated, and its administration by the courts would be a mere farce. These observations are applicable to the case before us.

But it should have been left to the jury to determine,

whether or not defendant did, in good faith, lease the room in the upper story with the intent and expectation that it should not be used as a gaming room, but only as a sleeping room of the tenant, or for other purposes not contrary to law. Under the charge of the court, this office of the jury was withdrawn from them. The judgment must, therefore, be reversed, and the cause remanded.